UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In Re STERLING FOSTER & CO., Inc.,     MDL Docket No. 1208
SECURITIES LITIGATION

-------------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER
99 CV 2789 (ADS) (MLO)**

ROBERT LEVITT for himself and as custodian
for Richard Levitt and Monica Levitt,
ROBERT RICE, STEPHEN G. SIBEN,
STEPHEN STOBEHN, STANLEY
VELTKAMP, PHILIP C. VITANZA for himself
and Elizabeth Vitanza and Luke Vitanza, JOHN T.
WHITE, GUY V. WOOD, CARL ZANDER, JR.,
and TED M. and KATHRYN N. JONES,
as Trustees,

                              Plaintiffs,

           -against-

BEAR STEARNS & CO, INC., and BEAR
STEARNS SECURITIES CORP.,

                          Defendants.

-------------------------------------------------------------X

THOMAS ROGERS, et al.,           **97 CV 189 (ADS) (MLO)**

                     Plaintiffs,

           -against-

STERLING FOSTER & CO., INC., et al.,

                     Defendants.     **Consolidated With:**

-------------------------------------------------------------X

(caption continues on next page)

LEO W. SMITH, et al.,

                 Plaintiffs,

        -against-                        **97 CV 610 (ADS) (MLO)**

STERLING FOSTER & CO., INC., et al.,

                 Defendants.
---------------------------------------------------------X
WILLIAM V. WRIGHT, et al.,

                 Plaintiffs,

        -against-                        **97 CV 1689 (ADS) (MLO)**

STERLING FOSTER & CO., INC., et al.,

                 Defendants.
---------------------------------------------------------X
MICHAEL REYNOSA, et al.,
                 Plaintiffs,

        -against-                        **97 CV 3253 (ADS) (MLO)**

STERLING FOSTER & CO., INC., et al.,

                 Defendants.
---------------------------------------------------------X
ANDREW PETIT, et al.,

                 Plaintiffs,

        -against-                        **97 CV 3775 (ADS) (MLO)**

STERLING FOSTER & CO., INC., et al.,

                 Defendants.
---------------------------------------------------------X

**APPEARANCES:**

**MILBERG WEISS BERSHAD HYNES & LERACH, LLP**
Co-Lead Counsel for the Plaintiffs
One Pennsylvania Plaza, 49th Floor
New York, N.Y. 10199
   By: Robert A. Wallner, Esq.
      Kim Levy, Esq., Of Counsel

**GOODKIND LABATON RUDOFF & SUCHAROW, LLP**
Co-Lead Counsel for the Plaintiffs
100 Park Avenue
New York, N.Y. 10017-5563
   By: Lou Gottlieb, Esq.
      Ira A. Schochet, Esq.
      Jonathan M. Plasse, Esq.
      David Goldsmith, Esq.
      James M. Strauss, Esq., Of Counsel

**RATHMAN, FRANCIS & HOLLAND, LLC**
Co-Lead Counsel for Claims Against Advanced Voice Technologies, Inc., Com/Tech
Communications Technologies, Inc. & Embryo Development Corporation
1031 Lami
St. Louis, MO 63104
   By: Steven J. Stolze, Esq., Of Counsel

**KIRBY McINERNEY & SQUIRE, LLP**
Co-Lead Counsel for Claims Against Lasergate Systems, Inc. & ML Direct, Inc.
830 Third Avenue
New York, N.Y. 10022
   By: Peter S. Linden, Esq.
      Lewis S. Sandler, Esq., Of Counsel

**MORLEY AND TRAGER**
Attorneys for the Levitt Plaintiffs
230 Park Avenue
New York, NY 10169
   By: Leslie Trager, Esq., Of Counsel

**LAW OFFICES OF JOSEPH D'ELIA**
Counsel for the Defendant Sterling Foster & Company, Inc**.**
464 New York Avenue, Suite 200
Huntington, N.Y. 11743
      By:    Joseph D'Elia, Esq., Of Counsel


**UNGARETTI & HARRIS**
Counsel for the Defendant Sterling Foster & Company, Inc.
3500 Three First National Plaza
Chicago, ILL 60602
      By:    Miriam G. Bahcall, Esq.
              Rawn Howard Reinhard, Esq., Of Counsel

**MORVILLO, ABRAMOWITZ, GRAND, IASON & SILBERBERG, P.C.**
Counsel for the Defendant Randolph Pace
565 Fifth Avenue
New York, N.Y.  10017
      By:    Edward M. Spiro, Esq., Of Counsel

**ALAN M. NOVICH**
Defendant <u>Pro</u> <u>Se</u>
Inmate Reg. No. 45537-054
Allenwood FPC
P.O. Box 1000
Montgomery, PA 17752

**CHOATE, HALL & STEWART**
Counsel for the Defendants Com/Tech Communication Technologies, Inc.,
ML Direct, Inc., and Nancy G. Shalek
Exchange Place, 53 State Street
Boston, MA 02109
      By:    Jeremiah T. O'Sullivan, Esq.
              John R. Baraniak, Jr., Esq., Of Counsel

**ZUCKERMAN, SPAEDER, GOLDSTEIN, TAYLOR & KOLKER, LLP**
Counsel for the Defendants Com/Tech Communication Technologies, Inc.,
ML Direct, Inc., and Nancy G. Shalek
1114 Avenue of the Americas
New York, N.Y. 10036
       By:    Lisa A. Cahill, Esq., Of Counsel

**BONDY & SCHLOSS, LLP**
Counsel for the Defendant Lasergate Systems, Inc.
60 East 42nd Street, 37th Floor 10165-0150
New York, N.Y. 10165-0150
       By:    Joel M. Wolosky, Esq., Of Counsel

**ARNOLD & PORTER**
Counsel for the Defendants Bear, Stearns & Co., Inc., and Bear, Stearns Securities
Corp.
399 Park Avenue
New York, N.Y. 10022
       By:    Peter L. Zimroth, Esq.
             Michael Schissel, Esq.
             Kerry Dziubek, Esq.
             David A. Weintraub, Esq., Of Counsel

555 Twelfth Street, N.W.
Washington, D.C. 20004-1202
       By:    Stephen M. Sacks, Esq.
             Scott B. Schreiber, Esq.
             James L. Cooper, Esq., Of Counsel

**KATTEN MUCHIN ZAVIS ROSENMAN**
Counsel for the Defendant Richard Harriton
575 Madison Avenue
New York, N.Y. 10022
       By:    Howard Wilson, Esq.
             Joseph Zuckerman, Esq., Of Counsel

**CAREY & ASSOCIATES**
Counsel for the Defendants Roger Buoy, Tony Swash, Terence McAuley, and
Armando Araujo
230 Park Avenue, Suite 2240

New York, N.Y.  10169-2240
        By:    Michael Q. Carey, Esq.
               Miriam A. Widmann, Esq., Of Counsel

**COVINGTON & BURLING**
Counsel for the Defendant Bear, Stearns Securities Corp.
1330 Avenue of the Americas
New York, N.Y. 10019
        By:    P. Benjamin Duke, Esq., Of Counsel

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM**
Counsel for Defendant Embryo Development
Four Times Square
New York, N.Y. 10036
        By:    Samuel Kadet, Esq., Of Counsel

**WILMER, CUTLER & PICKERING**
Counsel for the Defendant Michael Krasnoff
399 Park Avenue
New York, N.Y.  10022
        By:    Richard Bierschbach, Esq.
               Andrew D. Kaiser, Esq., Of Counsel

**MILBANK, TWEED, HADLEY & MCCOY**
Counsel for the Defendants Bernstein & Wasserman, LLP., Hartley Bernstein &
Steven Wasserman
1 Chase Manhattan Plaza
New York, N.Y. 10005
        By:    Scott Edelman, Esq., Of Counsel

**ROGERS & WELLS**
Counsel for the Defendants Bernstein & Wasserman, LLP, Hartley Bernstein &
Steven Wasserman
200 Park Avenue
New York, N.Y. 10166
        By:    David Meister, Esq., Of Counsel

**GOLDMAN & HAFETZ**
Counsel for the Defendant Michael Lulkin
500 Fifth Avenue

New York, N.Y. 10036
      By:    Susan Necheles, Esq., Of Counsel

**JEREMY LEE SLOVIK**
Defendant <u>Pro Se</u>
Royal Hutton Securities Hdq.
1499 West Palmetto Park Road
Boca Raton, F.L. 33486

**ADAM LIEBERMAN**
Defendant <u>Pro Se</u>

**FRANK MONROIG**
Defendant <u>Pro Se</u>

**TIMOTHY J. MATTHEWS**
Defendant <u>Pro Se</u>

**MATTHEW HAWLEY**
Defendant <u>Pro Se</u>

**JASON MAROWSKI**
Defendant <u>Pro Se</u>

**ANDREW TURSI**
Defendant <u>Pro Se</u>

**CRAIG KELLERMAN**
Defendant <u>Pro Se</u>

**MICHAEL SABATO**
Defendant <u>Pro Se</u>

**ROBERT J. PAULSON**
Defendant <u>Pro Se</u>

**SPATT, District Judge.**

This class action involves allegations by the Plaintiffs that the Defendants

made misstatements and omissions and were engaged in market manipulation with respect to six public offerings. Presently before the Court are motions for final approval of the settlement and the award of attorneys' fees and expenses.

## I.   BACKGROUND

The detailed factual background of this dispute is set forth in the Court's decisions and orders, including the following: In re Sterling Foster & Co. Sec. Litig., 222 F. Supp. 2d 216 (E.D.N.Y. 2002); Levitt v. Bear Stearns & Co. (In re Sterling Foster & Co.), 222 F. Supp. 2d 312 (E.D.N.Y. 2002); and the Second Circuit's August 13, 2003 decision, Levitt v. Bear Stearns & Co., 340 F.3d 94 (2d Cir. 2003). Familiarity with the previous decisions is presumed.

On May 23, 2006, the Lead Plaintiffs and Defendants Michael Krasnoff, Nancy G. Shalek, Lasergate Systems, Inc., Bear, Stearns & Co., Inc., Stearns Securities Corp. and Richard Harriton (the "Bear Stearns Defendants") (collectively, the "Settling Defendants") executed a Stipulation and Agreement of Settlement ("Settlement Agreement"). On June 3, 2006, this Court entered an order certifying, for settlement purposes, the action as a class action for persons, entities, and their heirs, successors and assigns, who are members of the following subclasses:

> (1)   The Advanced Voice Subclass consisting of all purchasers of Advanced Voice Technologies, Inc. ("Advanced Voice") units (each unit consisting of one share of common stock and one Class A Redeemable Common Stock Purchase Warrant) during the period February 6, 1995 through October 8, 1996;

(2) The Com/Tech Subclass consisting of all purchasers of Com/Tech Communications Technologies, Inc. ("Com/Tech") common stock during the period August 23, 1995 through October 8, 1996;

(3) The Embryo Subclass consisting of all purchasers of Embryo Development Corporation common stock during the period November 17, 1995 through October 8, 1996;

(4) The Applewoods Subclass consisting of all purchasers of Applewoods, Inc. ("Applewoods") common stock during the period April 10, 1996 through October 8, 1996;

(5) The Lasergate Subclass consisting of all purchasers of Lasergate Systems Inc. ("Lasergate") units (each unit consisting of one share of common stock and two warrants to purchase common stock) during the period of October 17, 1994 through October 8, 1996;

(6) The ML Direct Subclass consisting of all purchasers of ML Direct, Inc. ("ML Direct") units (each unit consisting of two shares of common stock and one warrant) during the period September 3, 1996 through October 8, 1996; and

(7) The ML Direct Extended Subclass consisting of all purchasers of ML Direct Inc. units (each unit consisting of two shares of common stock and one warrant) during the period September 3, 1996 through December 31, 1996.

Following the Court's approval, counsel for the Lead Plaintiffs ("Lead Counsel") mailed 22,588 notices to the class members. One class member requested to be excluded from the class, and two class members previously excluded themselves from the class in response to the notice of pendency and partial settlement mailed to class members in 2002.

An objection to the Settlement Agreement has been filed by Leslie Trager, Esq. on behalf of Robert Levitt, Robert Rice, Stephen G. Siben, Stephen Strobehn,

Stanley Veltkamp, Philip C. Vitanza, John T. White, Guy V. Wood, Carl Zander, Jr., and Ted M. and Kathryn Jones (the "Levitt Plaintiffs"). The Levitt Plaintiffs allege that the settlement does not meet the substantial fairness test. Specifically, they claim that: (1) the settlement amount is insufficient to compensate the Levitt Plaintiffs; (2) the Levitt Plaintiffs are likely to succeed at trial; and (3) Leslie Trager should be appointed new lead counsel.

The Settlement Agreement provides for a total cash settlement of $1,400,000 which will resolve all remaining claims that were not dismissed or settled pursuant to the 2002 partial settlement agreement. The 2002 partial settlement agreement provided for a cash settlement of $2,200,000 and Lead Counsel were awarded fees of 25% of that settlement amount. Lead Counsel presently request an attorneys' fee award of 25% of the settlement amount, which is the sum of $350,000. Lead Counsel also seek reimbursement of their litigation expenses in the amount of $85,935.37. Leslie Trager, the Levitt Plaintiffs' counsel, also seeks an award of attorneys' fees in the amount of $200,000.

On October 27, 2006, this Court held a Fairness Hearing during which Lead Counsel, Leslie Trager, Esq. and Defendants' counsel had the opportunity to argue these issues and present evidence in support of their claims.

# II. <u>DISCUSSION</u>

**A.     The Fairness of the Settlement Agreement**

Rule 23(e) of the Federal Rules of Civil Procedure requires that any settlement or dismissal of a class action be approved by the court.  The district court must determine whether the settlement is "fair, adequate, and reasonable, and not a product of collusion." <u>Joel A. v. Giuliani</u>, 218 F.3d 132, 138 (2d Cir. 2000).  Furthermore, the court must "eschew any rubber stamp approval" yet "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 462 (2d Cir. 1974).

"A district court must review both the procedural and substantive fairness of a proposed settlement." <u>Hicks v. Morgan Stanley & Co.</u>, No. 01 Civ 10071, 2005 U.S. Dist. LEXIS 24890, at *12 (S.D.N.Y. Oct. 24, 2005).  The reasonableness of a settlement falls within the court's discretion. <u>Joel A.</u>, 218 F.3d at 139.

The Second Circuit has identified nine factors (the "Grinnell factors") that courts should review to determine the substantive fairness of a settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the

settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  Grinnell, 495 F.2d at 463.

In addition, courts should analyze the negotiating process in light of "the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves."  Malchman v. Davis, 706 F.2d 426, 433 (2d Cir. 1983) (citations omitted).  A strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length.  See Chatelain v. Prudential-Bache Sec., 805 F. Supp. 209, 212 (S.D.N.Y. 1992).

The Lead Plaintiffs argue that the settlement was negotiated at arm's length, among experienced counsel, in good faith and under the active supervision of former Judge Milton Mollen who facilitated the negotiations.  The Lead Plaintiffs note that in December 2002, this Court approved a partial settlement of $2,200,000 negotiated by Lead Counsel.  The Lead Plaintiffs further claim that the Grinnell factors weigh in favor of the settlement.  In particular, the Lead Plaintiffs contend that: (1) the case involves complex legal and factual issues and continued litigation would result in significant litigation costs; (2) although no formal discovery was conducted prior to entering into the Settlement Agreement, Lead Counsel conducted a pre-trial investigation and considered the decisions previously rendered in this case by this Court and the Second Circuit; (3) the class members face significant risk in

establishing liability; (4) at trial, the issue of damages could be reduced to a "battle of the experts" possibly resulting in no damages award; (5) there is some risk that the Settling Defendants may successfully defeat class certification if the litigation proceeds; and (6) the range of the settlement is reasonable given the difficulties and uncertainties of litigating the case.

        1.      <u>The Procedural Fairness of the Settlement</u>

Notably, the settlement was negotiated under the supervision of Judge Mollen, by experienced attorneys who had achieved a previous partial settlement in this litigation. "[A] court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." <u>D'Amato v. Deutsche Bank</u>, 236 F.3d 78, 85 (2d Cir. 2001); <u>Hicks</u>, 2005 U.S. Dist. LEXIS 24890, at *14-15 ("The participation of a respected and neutral mediator gives [the court] confidence that [the negotiations] were conducted in an arms-length, non-collusive manner") (internal citations omitted). Moreover, Mr. Trager, as counsel to the Levitt Plaintiffs, attended the last two negotiation sessions with Bear Stearns before Judge Mollen. Clearly, the Settlement Agreement was reached through arm's length negotiations between experienced counsel, under the supervision of a highly respected mediator. This Court finds that the settlement is procedurally fair.

Although Mr. Trager argues that Lead Counsel made misrepresentations and

chose "to take a course of slow and harmful settlement negotiations" he has presented no evidence that Lead Counsel failed to act in the best interests of the class. Moreover, Mr. Trager fails to acknowledge Judge Mollen's role in the settlement negotiations or his own attendance at the negotiations. He appears to make disparaging remarks, such as accusing Lead Counsel of acting for the benefit of Bear Stearns rather than the Plaintiffs, in a renewed attempt to seek an appointment to the role of lead counsel. The Court notes that it has denied numerous prior motions by Mr. Trager to be appointed lead counsel. In this regard, Mr. Trager moved to be appointed lead counsel in May 1999, and the motion was denied in January 2000 by this Court. In November 2003, Mr. Trager again moved to be appointed lead counsel. In September 2004, this Court again denied his application. On January 21, 2005, the Second Circuit denied Mr. Trager's motion for mandamus relief and, in June 2006, this Court denied Mr. Trager's motion for reconsideration. It appears that Mr. Trager again advances arguments that have already been addressed by this Court. Once again, this Court denies the application of Leslie Trager to be appointed lead counsel for the reasons stated in this Court's previous orders.

2.   The Substantive Fairness of the Settlement

Based on a review of the relevant Grinnel factors, and after reviewing the evidence submitted by Mr. Trager at the Fairness Hearing, the Court concludes that the substantive terms of the settlement are fair, adequate, and reasonable. First, the

complexity, expense, and duration of continued litigation likely would be considerable. Despite the Levitt Plaintiffs' claims to the contrary, "[s]ecurities class actions are often 'difficult and . . . uncertain.'" Hicks, 2005 U.S. Dist. LEXIS 24890 (2005) (citing In re Sumitomo Copper Litig., No. 96 Civ. 4584, 1999 U.S. Dist. LEXIS 15594, at *17-18 (S.D.N.Y. Oct. 7, 1999)). In fact, this Court has previously determined that this is a highly complex case. Sterling Foster, 238 F. Supp.2d at 488. Moreover, the parties have not yet completed discovery, making continued litigation extremely costly. The Levitt Plaintiffs' argument that the case is simple and that continued litigation through discovery would involve only twelve depositions, is unrealistic. The issues presented in this litigation, such as determining whether claims against the Bear Stearns Defendants are barred by the statute of limitations; what information was available to the Plaintiffs at what time; whether Bear Stearns, as a clearing broker, owed a duty to the Plaintiffs; and whether Bear Stearns was a knowing participant, are complex and highly disputed. Continued litigation would necessarily involve substantial costs and a very uncertain result in a future complex and potentially lengthy trial with difficult liability issues. Further, Mr. Trager is the only attorney to file an objection to the settlement. He represents only eleven in a class of more than 20,000 members.

Although discovery has not been completed, Lead Counsel conducted a thorough pre-trial investigation and reviewed the Greenberg arbitration in which Bear

Stearns prevailed and subsequent Court opinions.  This case has been pending in this Court since 1997 during which time various decisions have been issued.  In addition, this Court has already approved a partial settlement in this matter finding that Lead Counsel was sufficiently informed by their pretrial investigation.

Although Mr. Trager provides the Court with an analysis of the information he finds pertinent from the Greenberg arbitration, "[i]n analyzing the parties' risks of establishing liability, the Court does not [need to] decide the merits of the case or resolve unsettled legal questions." Cinelli v. MCS Claim Servs., No. 04-cv-3809, 2006 U.S. Dist. LEXIS 33001, at *9 (E.D.N.Y. May 23, 2006) (internal citations omitted).  There are significant risks in taking any securities fraud class action case to trial.  In the present matter the NASD Arbitration Panel rejected Greenberg's claims against Bear Stearns and the Court affirmed that decision.  Moreover, despite the Levitt Plaintiffs' claims, the Bear Stearns Defendants' liability is unclear.  The Plaintiffs face a significant risk if they are forced to prove liability.  This Court has previously determined, in approving the partial settlement, that the issue of damages could become a costly battle of experts.  Although, as the Levitt Plaintiffs argue, Bear Stearns could likely withstand a larger judgment, liability remains unclear.

The Court finds that the settlement is within an appropriate range of reasonableness.  "The range of reasonableness inquiry is tightly bound to the risks of litigation." In re AOL Time Warner ERISA Litig., No. 02 Civ. 8853, 2006 U.S. Dist.

16

LEXIS 70474, at *27 (S.D.N.Y. Sept. 27, 2006). "It is clear, however, that the Settlement will not wholly restore the [Plaintiffs'] total losses . . . Yet, the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness. Here, the more helpful consideration is the amount of recovery in light of the considerable risks of litigation." Id. at *28 (internal citations omitted). As previously discussed, there are considerable risks to litigating this matter. The SEC found that the fraud at issue resulted in a $75 million loss. The total recovery in this matter, including both settlements equals $3.6 million and provides the Plaintiffs a recovery of 4.8% of the $75 million loss. That is a reasonable recovery, considering that the liability against Bear Stearns is very questionable. The Court further notes that the SEC has also recovered additional damages for investors, specifically, the ML Direct class, in the amount of $6 million.

Moreover, the Court permitted Mr. Trager the opportunity to present evidence in support of his claims during the Fairness Hearing. However, neither his argument nor his presentation of exhibits indicate that the Levitt Plaintiffs have a better chance of prevailing against Bear Stearns or that the settlement is unfair in any manner.

Pursuant to the Grinell factors, considering the costs of and risks involved in the continued litigation of this matter, the Court finds that the settlement is substantively fair.

3.    Plan of Allocation

"A plan of allocation is evaluated by the same standards applied to the settlement as a whole: fairness, reasonableness, and adequacy.  An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  In re AOL Time Warner, Inc. Sec. & ERISA Litig., No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 17588, at * 58 (S.D.N.Y. Apr. 6, 2006).  "A plan of allocation should be based on the nature and extent of class members' provable damages."  In re Luxottica Group S.p.A. Secs. Litig., No. 01-CV-3285, 2006 U.S. Dist. LEXIS 6133, at *33  (E.D.N.Y. Feb. 17, 2006). "Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach . . . Of course, nothing requires a settlement to benefit all class members equally.  Such a rule would itself result in an inequitable windfall to certain class members, to the detriment of others."  In re Global Crossing Sec. & ERISA Litig., No. 02 MD 1472, 2004 U.S. Dist. LEXIS 23946, at *89-90 n.4  (S.D.N.Y. Nov. 24, 2004).

Although the Levitt Plaintiffs object to the allocation of the settlement, the plan will distribute the settlement proceeds to class members based on the varying strengths of their claims.    The Lead Plaintiffs have established a separate settlement fund with the proceeds from each Settling Defendant.  Class members will participate in one or more funds based on their claims.  The Bear Stearns' settlement fund will be

allocated in recognition of the fact that only the ML Direct and Applewoods classes have claims that are not time barred. Recognized claims for purchases of ML Direct will be counted in full and $50,000 of the Bear Stearns' settlement fund will be reserved for ML Direct Extended subclass members.

The Court finds that the plan of allocation is reasonable and specifically recognizes that the Levitt Plaintiffs' claims against Bear Stearns are not time-barred. As such, those class members will receive additional compensation. Moreover, this plan allocation was conceived by experienced counsel under Judge Mollen's supervision.

**B.     Attorneys' Fees and Expenses**

1.     Reimbursement of Litigation Expenses

Counsel are entitled to reimbursement for reasonable litigation expenses. See Miltland Raleigh-Durham v. Meyers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those client."). Lead Counsel request $85,935.37 for such expenses. However, Lead Counsel note that a significant portion of this amount, $33,439.50, is sought as reimbursement for expenses incurred in connection with the 2002 partial settlement. There are no objections to these expenses, and given the length of this litigation, the litigation expenses appear reasonable. Accordingly, the

Court awards counsel $85,935.37, the full amount requested, as reasonable litigation expenses in this matter. These expenses will be subtracted from the total settlement amount, prior to the calculation of attorneys' fees.

     2.    <u>The Request of Leslie Trager, Esq. for Attorneys' Fees and Litigation Expenses</u>

Mr. Trager requests attorneys' fees in the sum of $200,000 or 25% of the Bear Stearns' $800,000 settlement fund. During the Fairness Hearing and in his submissions to the Court, Mr. Trager argued that his appeal to the Second Circuit resulted in the current settlement with Bear Stearns. Although this Court agrees that Mr. Trager should receive fees to compensate him for his work on that appeal, a review of Mr. Trager's time sheets indicates that he spent approximately 70 hours preparing his appeal at a rate of $300.00 per hour. Accordingly the Court awards Mr. Trager $20,790.00 in attorneys' fees. The Court also awards Mr. Trager litigation expenses for the appeal, in the sum of $2,862.74. These litigation expenses will be subtracted from the total settlement amount, prior to calculation of attorneys' fees.

     3.    <u>Attorneys' Fees for Lead Counsel</u>

Lead counsel request a fee of 25% of the $1,400,000 settlement. This amounts to a total sum of $350,000. Lead Counsel notes that the settlement notice advised class members that Lead Counsel would request fees in an amount not to exceed 25% of the settlement fund.

The Second Circuit has stated that attorneys who create a "common fund" are

entitled to "a reasonable fee – set by the court – to be taken from the fund."

Goldberger v Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000). The

determination of "reasonableness" is within the discretion of the district court. Id.

There are two methods by which the district court may calculate reasonable attorneys'

fees in class action cases; the lodestar method and the percentage method. Id. at 50

(holding that both the lodestar and the percentage of the fund methods are permitted).

Under the lodestar method, the district court scrutinizes the fee petition to

ascertain the number of hours reasonably billed and then multiplies that figure by an

appropriate hourly rate. Once that initial computation has been made, the district

court may, in its discretion, increase the lodestar by applying a multiplier based on

"other less objective factors" such as the risk of the litigation and the performance of

the attorneys and the result accomplished. Under the percentage method, the court

sets a certain percentage of the recovery as the fee. In determining what percentage to

award, courts have looked to the same "less objective" factors that are used to

determine the multiplier for the lodestar.

"Although the law in the Circuit has not been uniform, the trend of the district

courts in this Circuit is to use the percentage of the fund approach to calculate

attorneys' fees." In re American Bank Note, 127 F. Supp. 2d 418, 431 (S.D.N.Y.

2001). Courts favor the percentage of the fund method because lodestar "created an

unanticipated disincentive to early settlements," tempted lawyers to run up their hours,

and "compell[ed] district courts to engage in a gimlet-eyed review of line-item fee audits." Goldberger, 209 F.3d at 48-49; see In re American Bank Note, 127 F. Supp. 2d at 431-32. The Second Circuit recommends analyzing the documentation of the hours submitted by counsel as a "cross check" on the reasonableness of the requested percentage. Goldberger, 209 F.3d at 50.

Under the lodestar or the percentage method, courts should pay attention to the following factors: (1) the time expended and expertise of counsel, (2) the magnitude and complexities of the litigation, (3) the risks involved in the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations. See id. at 50. Moreover, the Second Circuit has stated that courts should consider the "overarching concern for moderation," id. at 53, and directed that courts set the attorneys' fees percentage largely according to the actual contingency risk. See id. at 54 ("We have historically labeled the risk of success as 'perhaps the foremost factor' to be considered in determining whether to award an enhancement.").

a.    The Risks Involved in the Litigation

Lead Counsel argue that the contingency risk was significant, especially given the fact that they undertook this action on a contingent fee basis and substantially risked non-payment if the action was dismissed. In addition, Lead Counsel assert that the Bear Stearns Defendants have consistently denied liability and that the risks of

continued litigation are evident from the unsuccessful Greenberg arbitration.  As previously discussed in relation to the fairness of this settlement, there is great risk in taking any case to trial, but especially one as difficult and complicated as the present case.  Lead Counsel did take some risk in undertaking the representation in this case.

b.    The Time Expended and Expertise Required by Counsel

Lead Counsel submit that collectively they have devoted 1,865.90 hours to the prosecution of this specific matter since 2001.  Lead Counsel represent that these hours establish a lodestar of more than $700,000.  The 25% requested by Lead Counsel constitutes a total of $350,000 of the settlement fund, less than half their lodestar, or a negative multiplier.  Thus, without the negative multiplier, their lodestar amount would swallow up a significant amount of the settlement fund.

It should be noted that no formal discovery has been conducted, and the settlement was achieved without requiring depositions – the major attorney time user.  So that, the Court finds that Lead Counsel did not invest a substantial amount of time and resources in the major litigation stages, namely depositions, trial or appeal.

c.    The Magnitude and Complexities of the Litigation

In the memorandum in support of Lead Counsel's petition for fees and reimbursement of expenses, Lead Counsel assert that this is a highly complex case that involves proving claims against Bear Stearns, a clearing broker with questionable direct involvement.  The Court agrees that this case is complex with difficult liability

issues.

        d.      <u>The Quality of Representation</u>

Lead Counsel argue that this Court, in approving the 2002 partial settlement, has previously determined that Lead Counsel provided good quality representation. Furthermore, Lead Counsel represent that they are experienced and skilled in the field of class action litigation and have provided information regarding their firms' achievements. The Court agrees that Lead Counsel have provided class members with quality representation.

        e.      <u>The Requested Fee in Relation to the Settlement</u>

Lead Counsel seek to recover a total amount of $350,000 from a settlement figure of $1.4 million. This amount is significantly less than the actual amount that counsel would have billed on this case.

        f.      <u>Public Policy Considerations</u>

Lead Counsel argue that the award of fees encourages the enforcement of federal securities laws and protects consumers against fraud. Counsel further argue that the SEC did not pursue Bear Stearns in connection with its action against Sterling Foster. As a result, a class action lead by counsel willing to take risks was necessary to protect the rights of the investors. Class actions are **a** beneficial remedy and Courts must award reasonable fees to encourage attorneys to bring such actions.

The Court awards Lead Counsel a percentage of 25% of the recovery. The

25% contingent fee is a fair and reasonable fee and follows the emerging trend within the Second Circuit in securities class actions.  See Goldberger, at 54 (lodestar award equal to 4% of the common fund of $54 million); Varljen v. H.J. Myers & Co., No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205, at *15 (S.D.N.Y. Nov. 8, 2000) (awarding 20%); In re: American Bank Note Holographics, Inc., 127 F. Supp. 2d 418 (S.D.N.Y. 2001) (rejecting a 30% claim and awarding 25%).  The Court notes that no objections to the attorneys' fees requested by Lead Counsel have been filed.

g.     The Lodestar "cross-check"

The Lodestar analysis, which the Second Circuit encouraged as a "cross-check" on the reasonableness of the requested percentage, 209 F.3d at 50, confirms the appropriateness of a 25% award in this case.  Furthermore, while this fee represents only 47.5% of the lodestar, the Court notes that Lead Counsel's lodestar calculation is based on attorney fees for partners ranging from $550 to $650 per hour.  In addition, certain paralegals billed at $150 to $225 per hour.  While the Court may have found these hourly rates excessive, see Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998) (in 1998 upholding court hourly rates of $200 for partners, $135 for associates and $50 for paralegals), the percentage fee is fair and reasonable since counsel are entitled to reasonable fees reflecting their time and effort expended in this case.

Accordingly, the Court awards to Lead Counsel 25% of the settlement sum

remaining following the award of litigation expenses. After the deduction of litigation expenses, the settlement sum equals 1,311,201.89. Accordingly, Lead Counsel are awarded fees in the sum of $327,800.47.

In his submissions to the Court, Mr. Trager requested that any settlement sum be placed in escrow, including the awards of attorneys' fees, pending a possible appeal. At the Fairness Hearing, however, Mr. Trager never referred to this contention. Therefore, Mr. Trager has until November 10, 2006, at 5:00 pm to file a letter with this Court requesting that the funds be placed in escrow and explaining the basis for his request. If Mr. Trager timely files such letter, Lead Counsel has until November 20, 2006, at 5:00 pm to file a letter in opposition to Mr. Trager's request.

### III.   CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Settlement Agreement is approved; and it is further

**ORDERED**, that judgment be entered dismissing all claims against the Settling Defendants on the merits and with prejudice subject to the terms of the Settlement Agreement; and it is further

**ORDERED**, that the allocation plan is approved; and it is further

**ORDERED**, that Lead Counsel for the Plaintiffs be awarded litigation expenses in the amount of $85,935.37; and it is further

**ORDERED,** that Leslie Trager, Esq. be awarded litigation expenses in the amount of $2,862.74; and it is further

**ORDERED,** that Lead Counsel be awarded attorneys' fees of 25% of the settlement fund, after subtraction of litigation expenses, or $327,800.47; and it is further

**ORDERED,** that Leslie Trager, Esq. be awarded attorneys' fees in the sum of $20,790.00; and it is further

**ORDERED**, that the motion of Leslie Trager, Esq. to be appointed Lead Counsel is **DENIED**; and it is further

**ORDERED** that the Clerk of Court is directed to close these six cases.

**SO ORDERED.**

Dated: Central Islip, New York
        October 31, 2006

                                                    _/s/ Arthur D. Spatt_
                                                    ARTHUR D. SPATT
                                                    United States District Judge